IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ANDREW DONOVAN, et al.** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **CIVIL NO. JKB-26-01329** |
| **STANLEY STEEMER INTERNATIONAL, INC., et al.** | * | |
| | * | |
| **Defendants.** | * | |

* * * * * * * * * * * *

**MEMORANDUM**

Pending before the Court is Defendant Madison Taylor, Inc.'s Partial Motion to Dismiss the Amended Complaint (ECF No. 12), specifically challenging Count II of the Amended Complaint, which alleges negligence on the part of Madison Taylor, Inc. For the reasons that follow, Defendant's Motion will be denied.[1]

## I. FACTUAL BACKGROUND

Plaintiffs Christine and Andrew Donovan ("the Donovans") sustained accidental water damage to their property in Baltimore County. (Am. Compl. ¶ 1–2, ECF No. 10). Defendant Stanley Steemer International, Inc. was first hired to mitigate the water damage, but the Donovans allege that the company "failed to follow industry-standard water mitigation protocols." (*Id.* ¶ 3–6). Subsequently, the Donovans discovered "mold growth and contamination" in both the area affected by the prior water damage and elsewhere in the property. (*Id.* ¶ 7).

[1] Madison Taylor, Inc. originally moved to dismiss Count II and Count IV of Plaintiffs' first filed complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (ECF No. 9). Plaintiffs docketed an Amended Complaint within 21 days of that motion. (ECF No. 12). A party may amend its pleading once as a matter of course no later than 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a). Accordingly, Defendant's Motion to Dismiss the original complaint (ECF No. 9) will be denied as moot.

The Donovans then retained Defendant Madison Taylor, Inc. ("Madison Taylor") "to perform remediation services" and "address mold contamination" at the property. (*Id.* ¶ 8–11). The parties agreed upon a scope of work for which the Donovans paid $8,120. (*Id.* ¶ 3–5). After Madison Taylor completed its work, the Donovans hired a third company to inspect the property. (*Id.* ¶ 13). That inspection revealed additional "cross-contamination" causing "mold and contaminants to remain and spread throughout the Property." (*Id.* ¶ 13–15).

From these events, as relevant to the pending Motion to Dismiss, the Donovans bring two claims against Madison Taylor. First, in Count II, Negligence, the Donovans allege that Madison Taylor owed them a duty to perform remediation services "in a reasonable careful and workmanlike manner," but the company breached that duty by "failing to properly perform" the mold remediation "by industry standards." (*Id.* ¶ 2–3). Specifically, they allege that Madison Taylor "disturbed mold-contaminated materials without adequate containment," causing mold spores to migrate to areas in the property beyond the previously affected area, including into the HVAC system. (*Id.* ¶ 5, 8). The resulting contamination damaged "tangible property within the residence" including furnishings and clothing and exposed "Plaintiffs and other occupants to elevated concentrations of airborne mold spores." (*Id.* ¶ 7, 9). Due to their exposure, the Donovans claim that they suffered "bodily injury, physical symptoms, adverse health effects, pain, suffering, inconvenience, and emotional distress." (*Id.* ¶ 10).

Second, in Count IV, Breach of Contract, the Donovans allege that Madison Taylor also breached its obligation under their contract by failing to dry the water damage, control contamination, and prevent additional water damage and mold growth "in accordance with the agreed scope of work and industry standards." (*Id.* ¶ 3–6). As damages, they claim that Madison Taylor's breach resulted in "further damage requiring additional remediation [and] repair." (*Id.* ¶

7). Of the two claims against them, Madison Taylor moves only to dismiss Count II, Negligence, for failure to state a claim.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of such a motion "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). Accordingly, when considering a motion to dismiss, the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678–79. Nor do "'naked assertions' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). A plaintiff need not, however, include "detailed factual allegations" at this stage of the proceedings, *Twombly* 550 U.S. at 555, and moreover federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014)

## III. DISCUSSION

Madison Taylor moves to dismiss Count II, Negligence, in the Amended Complaint for two reasons: "Because Plaintiffs have not pled an independent duty arising in tort and because the claim is barred by the economic loss doctrine." (Mot. Dismiss Mem. Supp. at 5, ECF No. 12.) The Motion will be denied.

### A. Economic Loss Doctrine

The Court first turns to arguments relating to the economic loss doctrine. Madison Taylor essentially argues that the damages alleged by Plaintiffs under Count II, Negligence, are inseparable from those also alleged in Count IV, Breach of Contract, so they should be barred as pure economic losses unavailable in tort. (*See* Mot. Dismiss Mem. Supp. at 4–5, ECF No. 12.)

In Maryland, the "economic loss doctrine represents a judicial refusal to extend tort liability to negligence that causes purely economic harm in the absence of privity, physical injury, or risk of physical injury." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 155 A.3d 445, 451 (Md. 2017). The doctrine is meant to act as a "boundary between contract law, the purpose of which is to enforce the expectations of the parties to an agreement, and tort law, the purpose of which is to protect people and property from foreseeable risks of harm by imposing upon others a duty of reasonable care." *Cash & Carry Am., Inc. v. Roof Sols., Inc.*, 117 A.3d 52, 61 (Md. App. Ct. 2015).

Simply put, when parties suffer "purely economic harm," the economic loss doctrine and its exceptions apply to bar a claim in tort. *Balfour Beatty,* 151 A.3d at 451–53. But where a party suffers more than pure economic harm, then the economic loss doctrine and its exceptions are irrelevant to the case. *See A.J. Decoster v. Westinghouse Elec. Corp*, 634 A.2d 1333 (Md. 1994) (holding that the court need not address the economic loss doctrine with a "loss of physical

property, rather than an economic loss"); *Arch Ins. Co. v. Costello Constr. of Maryland, Inc.*, Civ. No. DKC 19-1167, 2020 WL 1158776, at *3 (D. Md. Mar. 9, 2020) (finding that the economic loss doctrine "does not apply, and was never meant to apply, to situations where an accident has occurred and the damages sought are for property loss.").

Purely economic harms are those related to the benefit of a bargain, suffered when a product or service "fails to meet the contractual expectations of the purchaser." *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 631 (Md. 1995). For example, pure economic harms in product liability would include the "loss of value or use of the product itself, and the cost to repair or replace the product." *Cash & Carry*, 117 A.3d at 60 (citing *U.S. Gypsum v. Mayor and City Council of Baltimore*, 647 A.2d 405, 410 (Md. 1994)).

A party alleges more than pure economic harm, however, when they attempt to recover damages to "some person or tangible thing" outside of the product or service purchased. *See Counsel of Co–Owners Atlantis Condo. Inc. v. Whiting–Turner Contracting Co.*, 517 A.2d 336, 344 (Md. 1986) (citation omitted) (describing tort liability). For example, in a case cited by both parties in this case, the Appellate Court of Maryland (then the Maryland Court of Special Appeals) held that the doctrine of economic loss did not prevent a homeowner from recovering damages to other tangible personal property resulting from a roofer's negligent use of a torch. The court stated:

> [T]he economic loss doctrine would be relevant if, for example, the new roof installed on [the plaintiff's] townhouse was defective in a way that posed no risk to human safety, and [plaintiff] sued . . . in tort to recover damages for the cost to repair the defect. That claim would sound in contract, and tort recovery would not be permitted. [Plaintiff] does not allege that [defendants] negligently constructed a defective roof, however. It alleges that, in carrying out the roof replacement work, they carelessly used a torch so as to accidentally set fire to the roof of the townhouse. That is a tort claim to which the economic loss doctrine has no relevance.

*Cash & Carry*, 117 A.3d at 61. Thus, the economic loss rule prevents a plaintiff from using tort to recover the unreceived benefit of a bargain, but it does not prevent a plaintiff from using tort to recover for damages to other property or people resulting from a defendant's negligence.

Were the Donovans *only* to allege losses related to the cost of remediating the mold, for which they contracted, those would be purely economic and normally recoverable by contract action alone. Indeed, the Donovans allege just that in Count IV for Breach of Contract. (*See* Am. Compl. ¶ 7, ECF No. 10 ("Plaintiff's Property sustained further damage requiring additional remediation, and repair, and Plaintiff has suffered damages as a result").)

In their negligence claim, however, the Donovans go a step beyond the cost of repair and remediation. They also allege that Madison Taylor's failure to take proper precautions resulted in the uncontemplated release of mold spores spreading through their property, including into the HVAC system, resulting in personal injury. (See *id.* ¶ 10 ("Plaintiffs suffered bodily injury, physical symptoms, adverse health effects, pain, suffering, inconvenience, and emotional distress.").) Moreover, they allege damage to tangible things that their contract for mold remediation did not cover. (See *id.* ¶ 10 ("[T]angible personal property within the residence, including household contents, furnishings, clothing, and other belongings, became contaminated and damaged.").) This damage is not of the type normally recoverable under a contract. Personal injury and damages to other property sound in tort and, accordingly, Count II is a tort claim "to which the economic loss doctrine has no relevance." *See Cash & Carry*, 117 A.3d at 61.

**B. Negligence Claim**

The Court next turns to arguments about negligence. A plaintiff must ultimately prove four elements to prevail in a negligence claim: "1) the defendant owed the plaintiff a duty to conform to a certain standard of care; 2) the defendant breached this duty; 3) actual loss or damage

to the plaintiff; and 4) the defendant's breach of the duty proximately caused the loss or damage." *Davis v. Frostburg Facility Operations, LLC*, 177 A.3d 709, 720 (Md. 2018). Madison Taylor argues that the Donovans fail to sufficiently allege the first two elements: that they fail to allege that Madison Taylor owed them a duty in tort independent of their contract and fail to allege a specific act of negligence apart from too-generic labels and conclusions. (*See* Mot. Dismiss Mem. Supp. at *3–5, ECF No. 12; Reply Br. Supp. Mot. Dismiss Mem. at *3, ECF No. 16.)

**1. Duty of Care**

Absent a duty of care, there can be no liability in tort. *Davis,* 177 A.3d at 719–20. A contract does not automatically create a duty of care between its parties. *Mesmer v. Maryland Auto. Ins. Fund*, 725 A.2d 1053, 1058 (Md. 1999). "[W]hile a tort action in favor of a contracting party can be founded upon a duty arising out of the contractual relationship . . . the duty giving rise to the tort cause of action must be independent of the contractual obligation." *Id.* (quoting *Wilmington Trust Co. v. Clark*, 424 A.2d 744, 754 (Md. 1981)).

The Supreme Court of Maryland (then the Maryland Court of Appeals) has held that "[i]n determining whether a tort duty should be recognized in a particular context, two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties." *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 759 (Md. 1986). But where the risk of harm from an alleged act of negligence is not purely economic, then the "principal determinant of duty becomes foreseeability" and not the nature of the legal relationship. *Id.* at 760; *Landaverde v. Navarro*, 189 A.3d 849, 866 (Md. Ct. App. 2018). Because the risk of loss in this case is not purely economic, the essential question is whether the alleged harms were a foreseeable result of Madison Taylor's negligence. The Donovans have sufficiently alleged a duty of care for two reasons.

First, repair professionals like Madison Taylor often owe an independent duty of care to the parties with whom they are in contractual privity. "[I]n those occupations requiring peculiar skill, a tort duty to act with reasonable care will be imposed on those who hold themselves out as possessing the requisite skill." *Jacques*, 515 A.2d at 763 (citation omitted). That duty extends to repairmen: "It is now the almost universal rule that the contractor is liable to all those who may foreseeably be injured by the structure, not only when he fails to disclose dangerous conditions known to him but also when the work is negligently done. This applies not only to contractors doing original work, but also to those who make repairs." *Cash & Carry*, 117 A.3d at 62 (quoting *Whiting-Turner*, 517 A.2d. at 341) (citations omitted). Here, Madison Taylor held itself out as expert in residential mold remediation. (Am. Compl. ¶ 4, ECF No. 10.) The Donovans retained it to address mold contamination and the two parties agreed upon a scope of repair work. (*Id.* ¶ 3–5.) Under these facts, the Donovans have sufficiently alleged that Madison Taylor, as a professional repair organization, owed them as homeowner clients an independent tort duty to act reasonably when doing its work.

Second, the harm arising from Madison Taylor's alleged negligence was foreseeable and so also supports finding an independent tort duty at this stage of the litigation. Dangerous conditions creating risk of personal injury or death may create a duty in tort, with an action for the "reasonable cost of correcting the dangerous condition." *Whiting–Turner*, 517 A.2d at 345 (concluding that the risk of death or personal injury can generate a duty in tort). As noted above, Madison Taylor knew it was retained to address mold contamination, a potentially hazardous condition for human health. (Am. Compl. ¶ 9, ECF No. 10). A professional like Madison Taylor could reasonably foresee the risk of personal injury, death, and other property damage resulting from improper containment precautions. (*Id.* ¶ 7–9). Thus, the Donovans adequately allege that

Madison Taylor's remediation professionals had a duty to exercise reasonable care in performing their work, including to take measures to contain the mold or at least warn homeowners about it.

In sum, both the alleged harm (the risk to the Donovans' property and persons) and the relationship (contractual privity between a professional organization and the homeowners for whom it performs work) are sufficient to create a duty of care in tort independent of the contract.

**2. Breach of Duty**

Madison Taylor further argues that the Donovans do not adequately allege a breach of duty because the complaint includes only formulaic accusations related to the breach of contract rather than specific allegations of negligence on the part of Madison Taylor. (*See* Reply Br. Supp. Mot. Dismiss Mem. at 3–4, ECF No. 16.)

Madison Taylor's argument is not supported by a review of the Amended Complaint. The Donovans specifically allege that the company "disturbed mold-contaminated materials without adequate containment, causing mold spores and contaminated dust to migrate beyond the areas originally affected." (Am. Compl. ¶ 5, ECF No. 10). Madison Taylor's alleged act of disturbing the mold is not merely duplicative of their alleged failure to uphold the mold remediation contract. Rather, it is an extra-contractual act of liberating the mold spores to make mischief elsewhere. The fact that Madison Taylor was under contract to remediate the mold does not immunize it from liability for tortious acts done during that work. *Cash & Carry,* 117 A.3d at 61; *Pac. Indem. Co. v. Whaley*, 560 F. Supp.2d 425, 431 (D. Md. 2008) (recognizing that a subcontractor can be liable under tort for negligent acts done while fulfilling a contractual duty). If Madison Taylor had a duty to take reasonable care, independent from its contractual obligations, then the facts in the Amended Complaint, when taken as true, adequately allege a breach of that duty.

## IV. Conclusion

For the foregoing reasons, Defendant Madison Taylor Inc.'s Partial Motion to Dismiss the Amended Complaint (ECF No. 12) will be denied. Defendant's Motion to Dismiss the first complaint (ECF No. 9) will also be denied as moot. A separate Order follows.

DATED this 10 day of September 2026.

BY THE COURT:

James K. Bredar

James K. Bredar
United States District Judge